**JS-6**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARTHUR ACEVEDO,<br><br>  Plaintiff,<br>  vs.<br><br>PUNCH PRESS PRODUCTS, INC.,<br><br>  Defendant. | Civil Case No.: 2:24-cv-02690-MWC-RAO<br><br>**CONSENT DECREE**<br><br>**(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq*.)** |

# CONSENT DECREE

The following Consent Decree is entered into by and between Arthur Acevedo ("Plaintiff") and Punch Press Products, Inc. ("Punch Press" or the "Defendant"). The entities entering into this Consent Decree are each an individual "Settling Party" or "Party" and collectively the "Settling Parties" or "Parties".

**WHEREAS,** Plaintiff is a citizen of the State of California.

**WHEREAS,** Plaintiff is concerned with the environmental health of the Los Angeles River, its inflows and outflows, and other areas of the overall Los Angeles River Watershed, of which the Los Angeles River is a part, and uses and enjoys the waters of the Los Angeles River, its inflows and outflows, and other areas of the overall Los Angeles River Watershed;

**WHEREAS**, Punch Press is the operator of a facility that is engaged in industrial metal stamping and forming operations, and is located at 2035 E. 51st St., Vernon, CA 90058, hereinafter referred to by the Settling Parties as the "Facility;"

**WHEREAS,** Plaintiff contends that his use and enjoyment of these waters are negatively affected by the pollution allegedly caused by the operations at the Facility;

**WHEREAS,** Plaintiff contends he acts in the interest of the general public to prevent pollution in these waterways, for the benefit of their ecosystems, and for the benefits of all individuals and communities who use these waterways for various recreational, educational, and spiritual purposes;

**WHEREAS,** discharges from the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES"), General Permit No. CAS000001, [State Water Resources Control Board] Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ ("1997 Storm Water Permit" or "Previous Industrial Stormwater Permit"), and as amended by Order No. 2014-0057-DWQ as amended by Order No. 2015-0122-DWQ ("IGP"), and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.* ("Clean Water Act" or "CWA");

**WHEREAS**, the Facility is listed as operating under SIC Code 3469 relating to Fabricated Metal Products. Defendant obtained coverage for the Facility in 1992 under the California Industrial General Permit, under the issued WDID No. 4 19I000335. Defendant thereafter renewed the coverage for the

Facility in 2021 under the same WDID No. The 2015 and 2021 "Notice of Intent" for the Facility to comply with the terms of the Industrial Stormwater Permit list "Punch Press Products Inc" as the Operator and Facility names, respectively;

**WHEREAS**, on January 17, 2024, Plaintiff sent Punch Press, the United States Environmental Protection Agency ("EPA"), EPA Region IX, the State Water Resources Control Board ("State Board"), and the Regional Water Quality Control Board – Los Angeles Region ("Regional Board") a notice of intent to file suit ("Notice Letter") under Sections 505(a) and (b) of the Clean Water Act, 33 U.S.C. §§ 1365(a) and (b). The Notice Letter alleged violations of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a) and violations of the 1997 Storm Water Permit and the IGP at the Punch Press Facility[1];

**WHEREAS**, on April 3, 2024, Plaintiff filed a complaint against Punch Press in the United States District Court, Central District of California (Case No.: 2:24-cv-02690), alleging violations of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), and violations of the 1997 Storm Water Permit and the IGP at the Punch Press Facility ("Complaint");

**WHEREAS**, on or about on January 31, 2025, based on Punch Press' actual industrial activity, Punch Press submitted a "No Exposure Certificate" ("NEC") application to the Storm Water Resources Control Board to exclude Punch Press from IGP reporting requirements based on activities of the Facility;

**WHEREAS**, Punch Press' NEC status was approved by the Los Angeles Regional Water Quality Control Board on April 14, 2025 under NEC ID No. 4 19NEC014482;

**WHEREAS**, on or about on February 19, 2025, representatives of the Parties (including Plaintiff's and Defendant's expert environmental consultants) conducted an inspection of the Facility;

**WHEREAS**, Plaintiff alleges Punch Press to be in violation of the substantive and procedural requirements of the 1997 Storm Water Permit, the IGP and the Clean Water Act with respect to the Punch Press Facility;

**WHEREAS**, Punch Press disputes the validity of the assertions made by Plaintiff;

---

[1] For purposes of this Consent Decree, the Industrial General Permit and any amendments thereto in effect at the time of Punch Press' required compliance with the terms of this Consent Decree shall be referred to as "the Industrial General Permit" or "IGP."

1  **WHEREAS**, Punch Press continues to deny all allegations in the Notice Letter and Complaint relating to the Punch Press Facility;

**WHEREAS**, Plaintiff and Punch Press have agreed that it is in the Settling Parties' mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the Notice Letter and Complaint without further proceedings; and

**WHEREAS**, all actions taken by Punch Press pursuant to this Consent Decree shall be made in compliance with all applicable federal and state laws and local rules and regulations.

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

 **1.** The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a) of the Clean Water Act, 33 U.S.C. § 1365(a);

 **2.** Venue is appropriate in the Central District of California pursuant to Section 505(c)(1) of the Clean Water Act, 33 U.S.C. § 1365(c)(1), because the Punch Press Facility is located within this District;

 **3.** The Complaint alleges claims upon which relief may be granted pursuant to Section 505(a)(1) of the Clean Water Act, 33 U.S.C. § 1365(a)(1);

 **4.** Plaintiff has standing to bring this action; and

 **5.** The Court shall retain jurisdiction over this matter for purposes of enforcing the terms of this Consent Decree for the term of the Consent Decree, or as long thereafter as is necessary for the Court to resolve any motion to enforce this Consent Decree that is brought during the term of this Consent Decree.

**I.   OBJECTIVES**

It is the express purpose of the Settling Parties entering into this Consent Decree to further the objectives set forth in the Clean Water Act, 33 U.S.C. §§ 1251, et seq., and to resolve those issues alleged by Plaintiff in his Notice Letter and Complaint. Specifically, Punch Press agrees to comply with and maintain all required terms and conditions necessary to maintain its No Exposure Certification. Should Punch Press' No Exposure Certification be withdrawn, Punch Press will thereafter comply with

Receiving Water Limitation VI.A. in the IGP which requires that Punch Press "shall ensure that industrial storm water discharges … do not cause or contribute to an exceedance of any applicable water quality standards in any affected receiving water,"; Effluent Limitation V.A. of the IGP which requires that Punch Press "shall implement BMPs [Best Management Practices] that comply with the BAT/BCT requirements of . . .[the IGP] to reduce or prevent discharges of pollutants in . . . [Punch Press'] storm water discharge in a manner that reflects best industry practice considering technological availability and economic practicability and achievability"; and the Monitoring, Sampling, and Analysis Requirements found in § XI of the IGP. Punch Press shall maintain BMP compliance with BAT/BCT standards and with the applicable water quality standards as those terms are defined by the IGP. Nothing herein shall be interpreted as an admission by Punch Press that it has previously failed to comply with these or any other requirements of the CWA or the IGP.

II.     **AGENCY REVIEW AND TERM OF CONSENT DECREE**

A.     **Agency Review and Comment.** Plaintiff shall submit this Consent Decree to the United States Department of Justice and the EPA (collectively "Federal Agencies") within three (3) days of the later of: (i) the final signature of the Settling Parties, or (ii) the receipt by the Parties of any required additional documentation, for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) days after receipt by both agencies, as evidenced by written acknowledgement of receipt by the agencies or the certified return receipts, copies of which shall be provided to Punch Press. In the event that the Federal Agencies object to entry of this Consent Decree, the Settling Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies within a reasonable amount of time.

B.     **Effective Date.** The term "Effective Date" as used in this Consent Decree shall mean the day the Court enters this Consent Decree.

C.     **Termination Date.** This Consent Decree shall terminate two (2) years after the Effective Date ("Termination Date"), or at such time as Punch Press ceases to have stormwater discharges at the Punch Press Facility subject to the IGP and Punch Press: 1) files all necessary and appropriate submissions regarding the same to the State Board and/or the Regional Board; and 2) provides notice of such filing to

Plaintiff. If a motion regarding Punch Press' compliance with this Consent Decree is pending at the time the Consent Decree would otherwise terminate, the Court will retain jurisdiction to consider it.

### III. POLLUTION CONTROL REQUIREMENTS

**A.     No Exposure Certification.** Punch Press agrees to comply with and maintain all required terms and conditions necessary to maintain its No Exposure Certification during the life of this Consent Decree.

**B.     IGP and NOI Compliance.** In the event that (1) Punch Press fails to maintain its No Exposure Certification and/or no longer qualifies for a No Exposure Certification at any point during the life of this Consent Decree; and (2) continues to operate the Facility, Punch Press shall thereafter, within one hundred and twenty (120) days of the notice of the rescindment of its No Exposure Certification, undertake the following:

   **1.**     Submit a revised Notice of Intent to operate as a discharging entity under the Section I.A.17 of the IGP;

   **2.**     Draft and/or revise as applicable a Storm Water Pollution Prevention Plan (the "SWPPP") which meets all requirements as set forth in Section X of the IGP;

   **3.**     Implement a Monitoring Implementation Program ("MIP") in accordance with Section XI, Tables 1 – 2, and Attachment E of the IGP, that ensures that Punch Press samples the appropriate amount of Qualifying Storm Events ("QSEs") per annual reporting period, and tests said samples for all relevant pollutant parameters, including numeric action levels ("NALs") and numeric effluent limitations ("NELs") applicable to the Facility based on its SIC code, impaired pollutant parameters associated with the applicable receiving water, and any other relevant and applicable pollutant parameter required to be sampled by the Facility under the IGP;

   **4.**     Implement Best Management Practices ("BMPs") at the Facility to ensure that all pollutant parameters tested fall within acceptable ranges as proscribed by Section X.H of the IGP;

   **5.**     During the term of this Consent Decree, Punch Press shall conduct and document visual observations pursuant to Section XI.A of the IGP.

   **6.**     Submit an Annual Report to the State Board no later than July 15 of each pursuant to Section XVI of the IGP and containing all requisite information required thereto.

    **7.**    Adhere to and comply with all requirements under the Exceedance Response Action ("ERA") framework as found in Section XII of the IGP.

    **8.**    Continue to act in conformity with the IGP and the SWPPP for the Facility, as may be amended from time to time; and

    **9.**    Retain a Qualified Industrial Stormwater Practitioner ("QISP") as defined in Section IX.A of the IGP to aid in the carrying out of the above paragraphs III(B)(1)-(8).

**IV.**    <u>**MONITORING AND REPORTING**</u>

**A.**    **Site Inspections.**

    **1.**    Should Punch Press fail to maintain No Exposure Certification Status, Plaintiff may conduct a site inspection of the Facility one (1) time during the life of this Consent Decree, to confirm compliance with the terms of the Consent Decree. This inspection may occur during the Effective date, up to forty-five (45) days prior to the Termination Date. Up to three (3) of Plaintiff's representatives may attend the site inspection. The site inspection shall occur Monday through Friday, excluding Federal and religious holidays, and be scheduled for a time between 9:00 a.m. and 4:00 p.m. Plaintiff and Punch Press shall work in good faith to select a mutually acceptable date for the inspection, which will be scheduled at least ten (10) business days in advance. Punch Press' personnel, consultants, contractors, or attorneys may accompany Plaintiff's representative(s) throughout the inspection.

    **2.**    Plaintiff shall provide Punch Press with any comments regarding the Site Inspection within seventy-two (72) hours of the completion thereof. Punch Press shall respond to Plaintiff's comments within sixty (60) days of the date on which they are received; however, Punch Press is not obligated to respond to any comments regarding the Site Inspection received after seventy-two (72) hours has passed.

**B.**    **Compliance Monitoring and Oversight**. Punch Press shall make a one-time payment of Seven Thousand Five Hundred dollars ($7,500.00) to compensate Plaintiff's Counsel for costs and fees to be incurred for monitoring Punch Press' compliance with this Consent Decree, including the maintenance of the No Exposure Certification and/or compliance with the IGP otherwise should Punch Press' No

1  Exposure Certification status be revoked.  Payment shall be made payable to "Brodsky Smith" via U.S.
2  Mail within thirty (30) days of the Effective Date.
3  **C.    Punch Press Document Provision.**  During the term of this Consent Decree, within ten (10)
4  business days, Punch Press shall give notice to Plaintiff of all documents related to compliance with the
5  IGP and/or this Consent Decree at the Punch Press Facility that are submitted to the Regional Board, the
6  State Board, and/or any state or local agency, county, or municipality.  Any correspondence related to
7  Punch Press' compliance with the IGP and/or this Consent Decree received by Punch Press from any
8  regulatory agency, state or local agency, county, or municipality shall be provided to Plaintiff within ten
9  (10) business days of receipt by Punch Press.  Provided, however, that this Consent Decree shall not
10 require Punch Press to disclose any information or documents subject to the Attorney Client Privilege or
11 the Attorney Work Product doctrine.
12 **V.    ENVIRONMENTAL PROJECT & REIMBURSEMENT OF LITIGATION FEES &
13        COSTS**
14 **A.    Reimbursement of Attorneys' Fees and Costs.**  Punch Press shall pay a total of Forty Thousand
15 dollars ($40,000.00) to "Brodsky Smith" for investigation fees and costs, expert/consultant fees and costs,
16 and reasonable attorneys' fees incurred by Plaintiff as a result of investigating and preparing the lawsuit
17 and negotiating this Consent Decree.  Payment shall be made payable to "Brodsky Smith".  The payment
18 shall be made within thirty (30) days of the Effective Date.
19 **VI.   DISPUTE RESOLUTION AND RETENTION OF JURISDICTION**
20 **A.    Continuing Jurisdiction.**  This Court shall retain jurisdiction over this matter until the
21 Termination Date defined above for the purposes of implementing and enforcing the terms and conditions
22 of this Consent Decree and adjudicating all disputes among the Parties that may arise under the provisions
23 of this Consent Decree, unless a Party files a timely motion and is granted an extension of time from the
24 Court to retain jurisdiction.  The Court shall have the power to enforce this Consent Decree with all
25 available legal and equitable remedies, including contempt.
26 **B.    Meet and Confer.**  A Party to this Consent Decree shall invoke the dispute resolution procedures
27 of this Section by notifying the other Party in writing of the matter(s) in dispute.  The Settling Parties
28

shall then meet and confer in good faith (either telephonically or in person) in an attempt to resolve the dispute informally over a period of fourteen (14) business days from the date of the notice. The Parties may elect to extend this time in an effort to resolve the dispute without court intervention.

**C.     Dispute Resolution.**  If the Parties cannot resolve a dispute by the end of the meet and confer informal negotiations, then the Parties shall request a settlement meeting before the Magistrate Judge assigned to this action. In the event that the Parties cannot resolve the dispute by the conclusion of the settlement meeting with the Magistrate Judge, the Parties agree to submit the dispute via motion to the District Court.

**D.     Burden of Proof.**  In any dispute resolution proceeding, the Party invoking the dispute resolution procedures provided herein shall have the burden of demonstrating that the other Party has failed to meet its obligations as set forth herein.

**E.     Enforcement Fees and Costs.**  In resolving any dispute arising from this Consent Decree before the Court, the Parties shall be entitled to fees and costs incurred pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), Federal Rule of Civil Procedure Rule 11, applicable case law interpreting such provisions, and/or as provided by statutory law and/or case law.

**VII.    MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE**

**A.     Plaintiff's Public Release of Claims.**  This Consent Decree is a final and binding resolution between Plaintiff, on his own behalf, and on behalf of the public and in the public interest, and Punch Press, and its parents, subsidiaries, affiliated entities under common ownership, directors, managers, members, divisions, affiliates, insurers, landlords, lenders, successors or assigns, officers, agents, employees, shareholders, attorneys and other representatives, if any (collectively "Releasees"), and shall have a preclusive effect such that no other person or entity, whether purporting to act in his, her, or its interests or the public interest shall be permitted to pursue and/or take any action with respect to any alleged violation of the CWA, 1997 Storm Water Permit, and/or IGP that was alleged in the Complaint, Notice Letter, or that could have been brought pursuant to the Notice Letter or Complaint. Nothing in this Consent Decree waives the rights of the United States to enforce its rights under Federal Law.

**B.     Plaintiff's Release of Additional Claims.**  As to Plaintiff for and in his individual capacity only,

1  this Consent Judgment shall have preclusive effect such that he shall not be permitted to pursue and/or
2  take any action with respect to any other statutory or common law claim, to the fullest extent that any of
3  the foregoing were or could have been asserted by him against Punch Press or the Releasees based on the
4  facts alleged in the Complaint and/or the Notice Letter, whether or not based on actions committed by
5  Punch Press.

6  **C.     Waiver of Rights Under Section 1542 of the California Civil Code**

7  **1.**     Plaintiff acting in his individual capacity waives all rights to institute any form of legal
8  action, and releases all claims against Punch Press, and the Releasees, (referred to collectively in this
9  Section as the "Claims").  In furtherance of the foregoing, Plaintiff waives any and all rights and benefits
10 which he now has, or in the future may have, conferred upon him with respect to the Claims by virtue of
11 the provisions of § 1542 of the California Civil Code, which provides as follows:

12      A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR
13      OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR
14      HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF
15      KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER
16      SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

17  **2.**     Plaintiff understands and acknowledges that the significance and consequence of this
18  waiver of California Civil Code § 1542 is that even if Plaintiff suffers future damages arising out of or
19  resulting from, or related directly or indirectly to, in whole or in part, the facts in the Complaint or Notice
20  Letter, Plaintiff will not be able to make any claim for those damages against Punch Press and the
21  Releasees.

22  **D.     Punch Press' Release of Plaintiff.**  Punch Press, on behalf of itself, its past and current agents,
23  representatives, attorneys, successors and/or assignees, hereby waives any and all claims against Plaintiff,
24  his attorneys, and other representatives for any and all actions taken or statements made by Plaintiff and
25  his attorney and other representatives, whether in the course of investigating the Claims or otherwise.

26  **E.     Parties' Release.**  Unless specifically provided for in this Consent Decree, the Parties, on their
27  own behalf and on behalf of their current and former officers, directors, employees, and each of their

28

successors and assigns, and their agents, and other representatives release all persons including, without limitation, all other Parties to this Consent Decree (and each of their direct and indirect parent and subsidiary companies and affiliates and divisions, and their respective current and former officers, directors, managers, members, employees, shareholders, insurers, landlords, lenders, and each of their predecessors, successors, and assigns, and each of their agents, attorneys, consultants, and other representatives) release each other from any additional attorneys' fees or expenses related to the resolution of this matter.

**F.** Nothing in this Consent Decree limits or otherwise affects any Party's right to address or take any position that it deems necessary or appropriate in any formal or informal proceeding before the State Board, Regional Board, EPA, or any other administrative body on any other matter relating to Punch Press' compliance with the IGP or the Clean Water Act occurring or arising after the Effective Date of this Consent Decree.

## VIII. <u>MISCELLANEOUS PROVISIONS</u>

**A.    No Admission of Liability.** Neither this Consent Decree, the implementation of additional or modified BMPs, the revision and implementation thereof of the SWPPP, nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, admission, or acknowledgment of any fact, law, or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation.  Punch Press maintains and reserves all defenses it may have to any alleged violations that may be raised in the future.

**B.    Force Majeure**.  Punch Press will notify Plaintiff if timely implementation of its duties under this Consent Decree becomes impossible due to circumstances beyond the control of Punch Press or its agents and which could not have been reasonably foreseen and prevented by Punch Press' exercise of due diligence.  Any delays due to Punch Press' failure to exercise diligent efforts to comply with the terms of this Consent Decree will not, in any event, be considered to be circumstances beyond Punch Press' control.

C. **Construction.** The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the IGP, the Clean Water Act, or specifically herein.

D. **Choice of Law and Venue.** The laws of the United States shall govern this Consent Decree, with venue proper only in the Central District of California.

E. **Severability.** In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

F. **Correspondence and Notices.** Any and all notices and/or correspondence between the Parties provided for or permitted under this Consent Decree shall be in writing and personally delivered or sent by:

    1. First-class (registered or certified) mail return receipt requested;

    2. Overnight or two-day courier; or

    3. By email on any Party by the other Party to the following addresses:

**If to Plaintiff:**

Evan J. Smith
esmith@brodskysmith.com
Ryan P. Cardona
rcardona@brodskysmith.com
BRODSKY SMITH
9465 Wilshire Blvd., Ste. 300
Beverly Hills, CA 90212
Tel:   (877) 534-2590
Fax:   (310) 247-0160

**If to Punch Press:**

Clint D. Robison
crobison@ohaganmeyer.com
Benjamin Hase
bhase@ohaganmeyer.com
O'HAGAN MEYER
21650 Oxnard Street, Suite 530
Woodland Hills, CA 91367
Telephone:   (213) 306-1610
Facsimile:   (213) 306-1625

Any change of address or addresses shall be communicated in the manner described above for giving notices.

G. **Counterparts.** This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopy, email of a .pdf signature, or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

**H.     Modification of the Consent Decree.** Except as otherwise provided herein, this Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Settling Parties, or upon motion of any Party as provided by law and upon an entry of a modified Consent Judgment by the Court.

**I.     Full Settlement.** This Consent Decree contains the sole and entire agreement and understanding of the Parties with respect to the entire subject matter hereof, and any and all discussions, negotiations, commitments and understandings related thereto. No representations, oral or otherwise, express or implied, other than those contained herein have been made by any party hereto. No other agreements not specifically referred to herein, oral or otherwise, shall be deemed to exist or to bind any of the Parties.

**J.     Integration Clause.** This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the Consent Decree between the Settling Parties and expressly supersedes any and all prior oral or written Consent Decrees, covenants, representations, and/or warranties (express or implied) concerning the subject matter of this Consent Decree.

**K.     Authority of Counsel.** The undersigned representatives for Plaintiff and Punch Press each certify that they are fully authorized by the party whom they represent to approve this Consent Decree as to form.

**L.     Authority.** Punch Press certifies that its undersigned representative is fully authorized to enter into this Consent Decree, to execute it on behalf of Punch Press, and to legally bind Punch Press to its terms.

**M.     Agreement to be Bound.** The Settling Parties, including any successors or assigns, agree to be bound by this Consent Decree and not to contest its validity in any subsequent proceeding to implement or enforce its terms.

**IX.    COURT APPROVAL**

The Parties hereby respectfully request that the Court promptly approve and enter this Consent Decree. Upon entry of this Consent Decree, Plaintiff and Defendant waive their respective rights to a hearing or trial on the allegations of the Complaint and Notice Letter which are at issue in this action. If

1  this Consent Decree is not approved by the Court, it shall be of no force and effect, and it may not be
2  used in any proceeding for any purpose.
3      **IN WITNESS WHEREOF**, the undersigned have executed this Consent Decree as of the date
4  set forth below.
5  **SO AGREED AND APPROVED AS TO CONTENT**

**PLAINTIFF ARTHUR ACEVEDO**

Dated: _____

_____
Arthur Acevedo

**DEFENDANT PUNCH PRESS PRODUCTS, INC.**

Dated: _____

By:_____
Name:  Joseph McClure
Title:   Chief Executive Officer
        At Punch Press Products, Inc.

**APPROVED AS TO FORM**

**BRODSKY SMITH**

Dated: _____

By:_____
Evan J. Smith (SBN: 242352)
Ryan P. Cardona (SBN: 302113)

*Attorneys for Plaintiff*

**O'HAGAN MEYER**

Dated: _____

By:_____
Clint D. Robison (SBN 158834)
Benjamin Hase (SBN 314288)

*Attorneys for Defendant*

**IT IS SO ORDERED.**

Date:   October 28, 2025

*[signature]*

_____
The Honorable Michelle Williams Court
United States District Judge
Central District of California

1  this Consent Decree is not approved by the Court, it shall be of no force and effect, and it may not be
2  used in any proceeding for any purpose.
3      **IN WITNESS WHEREOF**, the undersigned have executed this Consent Decree as of the date
4  set forth below.
5  **SO AGREED AND APPROVED AS TO CONTENT**

**PLAINTIFF ARTHUR ACEVEDO**

Dated: 6/20/2025

*Arthur Acevedo*
Arthur Acevedo

**DEFENDANT PUNCH PRESS PRODUCTS, INC.**

Dated: 7/14/2025

By: [signature]
Name: Joseph McClure
Title: Chief Executive Officer
       At Punch Press Products, Inc.

**APPROVED AS TO FORM**

**BRODSKY SMITH**

Dated: 06/24/2025

By: *Ryan P. Cardona*
Evan J. Smith (SBN: 242352)
Ryan P. Cardona (SBN: 302113)

*Attorneys for Plaintiff*

**O'HAGAN MEYER**

Dated: 07/14/2025

By: [signature]
Clint D. Robison (SBN 158834)
Benjamin Hase (SBN 314288)
Brooke-Noelle D. Royes (SBN 337273)

*Attorneys for Defendant*

**IT IS SO ORDERED.**

Date: _____

_____
The Honorable Michelle Williams Court
United States District Court Judge
Central District of California